IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA A., <br><br> Claimant, <br><br> v. <br><br> MARTIN O'MALLEY, <br> Commissioner of Social Security, <br><br> Respondent. | No. 22 C 596 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Cynthia A.[1] ("Claimant") appeals the final decision of Respondent Martin O'Malley,[2] Commissioner of the Social Security Administration ("Commissioner"), denying her applications for a period of disability and disability benefits and supplemental security income. For the reasons set forth below, Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 16] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 19] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using her full first name and the first initial of the last name.

[2] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## BACKGROUND

On February 15, 2019, Claimant filed a Title II application for a period of disability and disability benefits, and on January 15, 2019, she protectively filed a Title XVI application for supplemental security income. (R.14). In both applications, Claimant alleged a disability beginning on February 27, 2017. (R.14). The claims were denied initially and on reconsideration, and Claimant then requested a hearing. (R.14). Administrative Law Judge ("ALJ") Kevin Vodak held a telephone hearing on February 10, 2021, and issued a decision on June 4, 2021, finding Claimant was not disabled. (R.14-28). The Appeals Council declined to review the ALJ's decision (R.1-6). Therefore, the ALJ's decision is considered the final decision of the Commissioner, and judicial review of that final decision by this Court is authorized by the Social Security Act, 42 U.S.C. § 405(g).

## DISCUSSION

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The ALJ must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

In this case at step one, the ALJ found that Claimant has not engaged in substantial gainful activity since February 27, 2017, the alleged onset date of her disability. (R.16). At step two, the ALJ found Claimant has the following severe impairments: degenerative joint disease of the left knee, status post-partial medial meniscectomy and chondroplasty; degenerative joint disease of the left shoulder and left hip; emphysema; major depressive disorder; generalized anxiety disorder; panic disorder; and opiate use disorder. (R.16). At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (R.16). The ALJ then determined Claimant has the RFC "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except for the following limitations: the claimant can occasionally reach overhead with the left upper extremity; occasionally push/pull with the left lower extremity; frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently

3

balance; frequently stoop; occasionally kneel, occasionally crouch, occasionally crawl; and have no more than occasional exposure to humidity, dust, odors, fumes and pulmonary irritants. Due to moderate limitations in concentration, persistence or pace, the claimant is restricted to understanding, remembering and carrying out simple routine and repetitive tasks; can have frequent interaction with supervisors, and occasional interaction with coworkers and the public." (R.19-20). At step four, the ALJ concluded Claimant is not able to perform any past relevant work. (R.26). At step five, the ALJ found that jobs exist in significant numbers in the national economy that Claimant can perform, and therefore, she is not disabled. (R.26-27).

Claimant asserts three arguments challenging the ALJ's decision, including: (1) the ALJ erred in his evaluation of the medical opinion evidence; (2) substantial evidence does not support the ALJ's RFC; and (3) the ALJ erred in not evaluating Claimant's subjective symptoms in accordance with Social Security Ruling 16-3p. The Court will address the arguments below and agrees with Claimant that remand is required.

In her first argument, Claimant argues that the ALJ erred in rejecting the opinion of Ms. Tajudeen, Claimant's treating nurse practitioner. Claimant's Brief [ECF No. 16], a t 5-9. An ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's]

4

case record." 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id.* "An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors." *Id.* "[A] detailed analysis is not required," but the ALJ must "give a reviewing court the bridge to connect the outcome to the record." *Id.* (internal quotation marks and brackets omitted).

In this case, Ms. Tajudeen opined that Claimant "could walk two blocks; sit thirty minutes at one time; stand thirty minutes at one time; sit, stand, and walk less than two hours total in an eight-hour workday; need to take unscheduled breaks during a workday; never lift any weight; never be able to perform manipulative tasks with the left upper extremity and perform manipulative tasks with the right upper extremity fifty percent of the time." (R.25). Ms. Tajudeen also opined that Claimant's pain and other symptoms were severe enough to frequently interfere with the attention and concentration needed to perform even simple work tasks. (R.25).

The ALJ, however, found Ms. Tajudeen's opinion "unpersuasive" and specifically stated:

> [S]he did not provide any objective medical evidence to support these limitations. The evidence of record as a whole was not consistent with this limitation. The claimant reported an ability to complete many activities of daily living including complete personal care tasks,

5

>complete household tasks, use public transportation, and shop in stores. (Ex. 4E, p.6, 7, and 8). She reported improvement in her knee subsequent to arthroscopy. (Ex. 1F, p.9 and 12). Upon examination, the claimant generally had normal range of motion, with no edema or tenderness. (Ex. 6F, p.94; Ex. 11F, p.86; Ex. 17F, p.12). She had examinations that showed no evidence of upper extremity injury, deformity, or tenderness. (Ex. 17F, p.11). Although she had evidence of emphysema, she generally had examinations that showed clear lungs to auscultation, and non-labored respirations. (Ex. 5F, p.19; Ex. 6F, p.12 and 127; Ex. 11F, p.10). She generally had normal gait. (Ex. 11F, p.9; Ex. 13F, p.84). Additionally, the claimant did not require an assistive device to ambulate. (Ex. 10F, p.3).

(R.25).

It is well-settled law that an ALJ cannot cherry pick which evidence to evaluate and disregard other relevant evidence. *Scrogham v. Colvin,* 765 F.3d 685, 696-99 (7th Cir. 2014). Although the ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, he must build a logical bridge from the evidence to his conclusion. *Warnell v. O'Malley*, 97 F. 4th 1050, 1054 (7th Cir. 2024); *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). In the Court's view, the ALJ selectively cited evidence that supported his analysis of Ms. Tajudeen's opinion and ignored other evidence that potentially supported her opinion and the limitations she assessed. There is some objective evidence in the record that supports Ms. Tajudeen's opinion, including among other evidence: antalgic gait (R.487); knee swelling (R.495); knee tenderness (R.499); meniscal tear (R.783); diminished shoulder, knee and hip range of motion and slow and limping gait and an inability to heel-toe walk (R.803); ankle swelling (R.820); degenerative joint disease of the ankle (R.823); degenerative disc disease of the cervical spine (R.1094); and decreased joint space in the hip. (R.1101). Claimant also testified that she experienced ongoing pain

and her knee "giving out" long after her knee surgery and physical therapy. (R.146-147).

The ALJ did not acknowledge any of this evidence when discussing the persuasiveness of Ms. Tajudeen's opinion and more important did not explain how and why he was persuaded by the evidence he did discuss and why he rejected the evidence that may have supported a finding or greater limitations. The ALJ cited only evidence that undermined the Ms. Tajudeen's opinion (R.25) and did not discuss any of the evidence that supported or was consistent with her opinion. Maybe the ALJ considered the evidence that supported Ms. Tajudeen's opinion and rejected it, but he does not say that, and the Court cannot and will not speculate. This lack of explanation requires remand.[3]

In her second argument, Claimant challenges the RFC determination, arguing the ALJ erred in his analysis of her need to elevate her leg and failed to address her panic attacks and how they would impact her RFC. Claimant's Brief [ECF No. 16], at 10-12. The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). The RFC is a determination of the maximum work-related activities a claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-

---

[3] Claimant also argues that the ALJ erred in his evaluation of Dr. Aleem's opinion. Because the Court is remanding on other issues, it declines to address this argument.

7

1001 (7th Cir. 2004). Social Security regulations require that the RFC assessment is "based on all the relevant evidence in the record." *Id.* at 1001, citing 20 C.F.R § 404.1545(a)(1).

In his decision, the ALJ acknowledged that Claimant experienced panic attacks once or twice a day. (R.20). The ALJ also found that Claimant suffered from a panic disorder and determined it was a severe impairment. (R.17). When discussing Claimant's statements about the intensity, persistence, and limiting effects of her panic attacks, the ALJ noted that Claimant experienced "improvement in her mental impairment symptoms with medication" and "did not require inpatient psychiatric treatment." (R.21-22). As for Claimant's need to elevate her leg, the ALJ also noted that Claimant reported that after standing for a while her knee would swell and she would have to sit down and elevate her knee to manage the swelling. (R.20, 146). The ALJ also acknowledged there was evidence in the record that showed swelling of the knee (R.20), but that Claimant reported improvement in her knee after an arthroscopy procedure. (R.21). However, the ALJ did not specifically address these limitations when making his RFC finding nor does he explain how and why the RFC accommodated her knee swelling and panic attics.

There is some evidence in the record that suggests Claimant may have limitations caused by a need to elevate her leg and other limitations caused by her panic attacks. Claimant specifically testified that she has panic attacks every day and that it can take an hour to recover from them. (R.142). Claimant also testified that if she is standing for a while her knee will swell and then she needs to sit down to

8

elevate it. (R.146-147). With respect to an ALJ's obligation to consider the evidence of record, the law is clear that the ALJ "may not ignore entire swaths of it that point toward a finding of disability." *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). If the ALJ did consider these limitations and rejected them, he does not say that. He also does not explain how the RFC accommodates these limitations, and the Court cannot speculate. Therefore, remand is required.

Claimant also challenges the ALJ's analysis of her subjective symptom allegations. Claimant's Brief [ECF No. 16], at 12-14. The ALJ acknowledged that Claimant "reported pain in her knees, ankles, and back." (R.25). The ALJ, however, does not further address her complaints of pain. Instead, the ALJ notes that Claimant "reported improvement in her knee subsequent to arthroscopy" and that she "generally had normal range of motion, with no edema or tenderness." (R.25-26). The law is clear, however that an ALJ may not discredit or ignore a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(2)); *see also Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore

9

*circumstantial* evidence, medical or lay, which does support a claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003).

The Seventh Circuit repeatedly has noted that "pain alone can be disabling," even in the absence of objective test results that evidence a disabling condition. *Stark v. Colvin*, 813 F.3d 684 (7th Cir. 2016); *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). Although the ALJ is not required to accept Claimant's testimony about her pain or any other complaints without question, the ALJ must at least minimally explain why he did not fully credit that testimony and/or how the limitations he included in the RFC accommodate Claimant's subjective symptoms and complaints. The ALJ did not do so here. In the Court's view, the ALJ improperly rested his analysis of Claimant's subjective symptoms too heavily on the absence of objective evidence. While it is true as the ALJ points out, there are some normal findings and examinations in the record, those findings do not completely negate the fact that Claimant testified she was in pain every day and that her knee gave out constantly and she would fall. (R.146-147). Without further explanation, the Court cannot trace the ALJ's reasoning as to why he accepted some of Claimant's complaints but not others and which complaints he determined were not supported by the medical evidence and why.

In addition, the ALJ did not discuss Claimant's daily activities in the context of the pain she was experiencing and her testimony about how her pain limited her abilities. Rather, the ALJ appears to have ignored, or at least given very short shrift to, the numerous limitations Claimant described in her daily activities. The Court

10

finds that the ALJ must do more to explain why he discounted Claimant's reports of pain on this record, and he must address Claimant's testimony about her activities of daily living and how she contends she is so limited. There is evidence in the record that Claimant's daily activities were far more circumscribed than how the ALJ characterized them, and the ALJ is required to consider any limits a clamant may encounter when performing daily activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009).

The Seventh Circuit has cautioned ALJs that "there are critical differences between keeping up with activities of daily living and holding down a full-time job." *Reinaas v. Saul,* 953 F.3d 461, 467 (7th Cir. 2020); *see also Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home...The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment...often differ dramatically between home and office or factory or other place of paid work."). The law is clear that here is a difference between being able to perform activities of daily living while obtaining help from others as needed or working at one's own pace and being able to engage in substantial gainful activity. *See RuthAnn G. v. Saul,* 2021 WL 2349671, at *9 (N.D. Ind. June 9, 2021) (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). Without further explanation, the Court cannot assess the validity of the ALJ's analysis, and remand is required.

11

## CONCLUSION

For the reasons set forth above, Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 16] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 19] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 12, 2024